UNITED STATES DISTRICT COURT　　　　　　　ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ALEX GOMEZ,

　　　　　　　　　　　Petitioner,　　　　　　　MEMORANDUM AND ORDER

　　　　　-against-　　　　　　　　　　　　　　08-CV-1888 (JG)

JUSTIN TAYLOR, Superintendent,
Gouverneur Correctional Facility,

　　　　　　　　　　　Respondent.
---------------------------------------------------------------x
A P P E A R A N C E S:

　　　　ALEX GOMEZ
　　　　　　　Buffalo Federal Detention Facility
　　　　　　　4250 Federal Drive
　　　　　　　Batavia, New York 14020
　　　　　　　*Petitioner* pro se

　　　　ANDREW M. CUOMO
　　　　　　　Attorney General of the
　　　　　　　State of New York
　　　　　　　120 Broadway, 22nd Floor
　　　　　　　New York, New York 10271
　　　　By:　　Paul M. Tarr
　　　　　　　*Attorney for Respondent*


JOHN GLEESON, United States District Judge:

　　　　Alex Gomez petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to overturn his conviction in New York State Supreme Court, Queens County, of criminal sale of a controlled substance in the third degree. Gomez claims that he was denied due process because the evidence introduced against him at trial was legally insufficient to justify a guilty verdict. He also claims that he was denied effective assistance of counsel because his lawyer failed to conduct certain investigations or interviews that might have yielded exculpatory

information and failed to object to leading questions at both a suppression hearing and his trial. All of his claims are meritless, and I deny his petition in its entirety.

BACKGROUND

The government's evidence at trial established that Gomez sold two packets of cocaine to an undercover police officer as part of a "buy-and-bust" narcotics operation at approximately 5:00 a.m. on December 22, 2004 near the intersection of of 37th Avenue and 80th Street in Queens. The undercover officer initially approached another man, Arley Trujollo, and asked him if he knew of anyone who could sell him cocaine. Trujollo said that a friend of his could, walked the officer around a corner, and gestured to Gomez, who was standing about 25 feet away. The officer then tried to pay Trujollo, but Trujollo would not accept any cash and told him to see Gomez himself. The officer then approached Gomez and asked to buy $40 worth of cocaine. The officer handed Gomez two $20 bills that had been previously photocopied to make a record of their serial numbers. Gomez accepted the cash, turned away from the officer, and then gave him two small bags of cocaine. A second "ghost" undercover officer, assigned to trail the primary undercover officer, witnessed the transaction.

After completing the controlled purchase, the primary undercover officer returned to his car on 76th Street and radioed a description of Gomez and Trujollo and their location to the field team's designated arresting officer, who was waiting nearby in an unmarked car. The arresting officer found four men fitting the primary undercover officer's description and detained all of them, including Gomez and Trujollo. The primary undercover officer and the "ghost" undercover officer then drove by the suspects and, in a radio communication to the arresting officer, identified Gomez and Trujollo as the two men who had sold the primary undercover officer the drugs. The arresting officer then arrested Gomez and searched him. The officer

found the two $20 bills that the primary undercover officer had passed in exchange for the cocaine in a pocket of Gomez's jacket.

On January 25, 2006, a jury convicted Gomez of criminal sale of a controlled substance in the third degree. On February 15, 2006, a judge sentenced him to a term of imprisonment of six to twelve years. Gomez raised only one claim on direct appeal: that the evidence adduced at trial was legally insufficient to justify his conviction. The Appellate Division, Second Department, rejected his claim and affirmed his conviction, *People v. Gomez*, 848 N.Y.S.2d 282 (2nd Dep't 2007), and the Court of Appeals denied him leave to appeal, 10 N.Y.3d 765 (2008).

While his direct appeal was pending, Gomez filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. In his motion, Gomez claimed that his lawyer was constitutionally ineffective for (1) failing to investigate a report prepared by the primary undercover agent in which he described the man who had sold him the drugs as a black male; (2) failing to interview a David Gonzales, who could have provided exculpatory information; and (3) failing to object to leading questions at a suppression hearing, among other reasons. The Supreme Court, Queens County, denied his motion. *People v. Gomez*, Indictment No. 10315/05 (Oct. 6, 2006). Gomez did not appeal.

After the conclusion of his direct appeal, Gomez petitioned the Appellate Division for a writ of error coram nobis, claiming that his appellate counsel was constitutionally ineffective for failing to raise the ineffective assistance of trial counsel claims he had unsuccessfully pressed in his motion to vacate his conviction, among other reasons. The Appellate Division denied his petition, *People v. Gomez*, Indictment No. 10315/05 (2nd Dep't

Sept. 2, 2008), and the Court of Appeals denied him leave to appeal, Indictment No. 10315/05 (Nov. 28, 2008)

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the scope of federal habeas review of claims challenging a state conviction that state courts have adjudicated on the merits. 28 U.S.C. § 2254(d). A federal court may overturn a state court's ruling on the merits of a claim only if the ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

Federal habeas courts do not generally examine claims challenging a state court conviction, even under this deferential standard, unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A claim is unexhausted if a petitioner has failed to fairly present that claim to the highest state court with jurisdiction to hear the claim. *See Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003). If an unexhausted claim is inexhaustible because the state court to which the petitioner would have to present the claim to meet the exhaustion requirement would find the claim procedurally barred, it is deemed procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). A federal habeas court may review a procedurally defaulted claim only if the petitioner can establish "cause for the default and actual prejudice as a result of the alleged violation of federal law," *id.* at 750, or a fundamental miscarriage of justice, *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Even where exhaustion is still possible, a federal habeas court may simply deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) (authorizing a federal court to

deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the Courts of the State").

A.   *Insufficiency of Evidence*

Gomez claims that the evidence introduced at trial was legally insufficient to prove his guilt. Because Gomez exhausted this claim on direct appeal, I examine it on the merits under the deferential AEDPA standard of review.

A state prisoner is entitled to federal habeas relief if there was not "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 312 (1979). But here the undercover agent's near contemporaneous and in-person identification of Gomez as the man who sold him the drugs and Gomez's possession of the pre-recorded buy money is ample evidence from which a rational jury could have found guilt beyond a reasonable doubt. Accordingly, I see no reason why the New York courts' conclusion that sufficient evidence supported Gomez's conviction was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

B.   *Ineffective Assistance of Counsel*

Gomez claims that he was denied effective assistance of counsel because his lawyer (1) failed to investigate a report composed by the primary undercover agent in which he described the man who sold him drugs as a black male; (2) failed to interview either his co-defendant, Arley Trujollo, or David Gonzales, both of whom Gomez asserts could have provided exculpatory information; and (3) failed to object to leading questions at both his suppression hearing and his trial. None of these claims have any merit.

To be denied the Sixth Amendment right to effective assistance of counsel, a defendant must have been prejudiced by his lawyer's deficient performance. Thus, to establish

ineffective assistance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

   *1. Failure to Investigate the Buy Report*

   In his report documenting the controlled transaction, known as a "buy report," the primary undercover agent described both the man whom he initially asked for drugs (whom he later identified as Trujollo) and the man from whom he bought the drugs (whom he later identified as Gomez) as an "M/B." Gomez, interpreting this notation as shorthand for "Male/Black," argues that his lawyer should have investigated the reference since Gomez is not black. It was not objectively unreasonable, however, for Gomez's lawyer to fail to inquire about this discrepancy. Gomez was arrested only after the agent who authored the report observed him in custody, minutes after the controlled purchase, and confirmed that Gomez was indeed the person from whom he bought drugs. Also, Gomez was found carrying the pre-recorded bills the agent had passed in exchange for the drugs. These circumstances would have made it extremely difficult for Gomez's lawyer to argue, on the basis of the apparently inconsistent description in the buy report, that someone other than Gomez had sold the drugs to the agent. Therefore, the lawyer could have sensibly decided that further investigation was unnecessary. Moreover, even assuming that his lawyer's conduct was objectively unreasonable, these same circumstances foreclose any reasonable possibility that Gomez would have been acquitted if his lawyer had pursued the inconsistency in the hope of challenging the agent's identification of Gomez as the perpetrator.

6

2.   *Failure to Interview Trujollo or Gonzales*

Gomez claims that his lawyer was ineffective because he failed to interview Trujollo, his co-defendant, or David Gonzalez, who he claims was arrested at the same time he was. Gomez asserts, without any evidentiary support, that both of these men could have provided exculpatory information.

Gomez's lawyer did not err by not interviewing Trujollo. As Gonzales's co-defendant, Trujollo would have had his own lawyer. And Trujollo's lawyer likely would not have permitted Gonzales's lawyer to interview Trujollo and perhaps elicit a statement adverse to Trujollo's interests. Most important, Gomez does not claim, even now, that Trujollo would have given a statement exculpating Gomez if Trujollo had been interviewed. Accordingly, even assuming that Gomez's lawyer never attempted to interview Trujollo, he would have done nothing wrong.

Nor did Gomez's lawyer err by not interviewing David Gonzales. Gomez claims that David Gonzales was arrested at the same time he was and that it was Gonzales who actually sold the drugs to the undercover agent. Gomez has offered no evidence supporting these allegations, but even if they are true, his lawyer did not act unreasonably in not seeking to interview Gonzales. If Gonzales had been arrested with Gomez, it is likely he would have had his own lawyer, who, like Trujollo's lawyer, likely would not have permitted Gonzales's lawyer to speak with his client. And even if Gomez's lawyer had spoken with Gonzales, it is hard to imagine under what circumstances an interview with Gonzales could have yielded exculpatory evidence. Gomez's lawyer was not obligated to speak with Gonzales in the unrealistic hope that Gonzales would spontaneously confess. Finally, given the unequivocal, near contemporaneous identification by the primary undercover agent and the recovery of the pre-recorded buy money

from Gomez, it is inconceivable that Gonzales's testimony -- even if it was available and helpful to Gomez -- would have produced a different result at Gomez's trial.

### 3. *Failure to Object to Leading Questions*

Gomez claims that his lawyer was ineffective because he failed to object to leading questions at both his suppression hearing and trial, but I have reviewed the transcript pages at issue in the suppression hearing and found no inappropriate questioning. Because Gomez does not identify any specific leading questions that his lawyer failed to object to at trial, his claim regarding any of those questions is also denied. In any event, the failure of a lawyer to object to leading questions is not the kind of lapse that warrants habeas relief.

## CONCLUSION

The petition is denied. Because I have rejected the petition on the merits, there is no need to address respondent's arguments that Gomez's claims are procedurally barred. No certificate of appealability shall issue because Gomez has not made a substantial showing that he was denied a constitutional right.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 17, 2010
      Brooklyn, New York